1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302
Voice: 818-225-9040
Facsimile: 818-225-9042

Attorneys for Plaintiff Sergio Betancourt
and others similarly situated

ADDITIONAL COUNSEL LISTED ON NEXT PAGE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SERGIO BETANCOURT, on behalf of
himself and others similarly situated,

Plaintiff,

vs.

MERCEDES-BENZ USA, LLC,

Defendant.

Case No.

**CLASS ACTION**

**COMPLAINT FOR:**

**VIOLATIONS OF BUSINESS AND
PROFESSIONS CODE
SECTION 17200,** *et seq.*

**VIOLATION OF CIVIL CODE
SECTION 1750,** *et seq.*

1

2
**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
3
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
4
abasser@pomlaw.com
1100 Glendon Avenue
5
15th Floor Los Angeles, CA 90024
Telephone: (310) 432-8492
6

7
Manny Starr (319778)
manny@frontierlawcenter.com
8
Adam Rose (210880)
adam@frontierlawcenter.com
9
**Frontier Law Center**
23901 Calabasas Road, #2074
10
Calabasas, CA 91302
Telephone: (818) 914-3433
11
Facsimile: (818) 914-3433

12

13
Additional Attorneys for Plaintiff
Sergio Betancourt and others similarly situated

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiff Sergio Betancourt ("Plaintiff" or "Betancourt"), individually and
2    on behalf of all other California citizens similarly situated, brings this action
3    against Defendant Mercedes-Benz USA, LLC, ("Defendant" or "Mercedes-
4    Benz"), upon information and belief, except as to his own actions, the
5    investigation of his counsel, and the facts that are a matter of public record, and
6    alleges as follows:

7                              **INTRODUCTION**

8         1.    This matter arises from Defendant Mercedes-Benz's unlawful failure
9    to tender a statutorily compliant California Emissions Warranty for the vehicles
10   that Mercedes-Benz distributes in the state of California.

11        2.    In 1990, the California Air Resources Board ("CARB") submitted,
12   and the Legislature adopted, California Code of Regulation §§ 2035, *et seq*.,
13   which, requires all vehicle manufacturers to ensure that any new motor vehicle
14   sold in California is accompanied by a "statutorily compliant" general emissions
15   warranty. ("California Emissions Warranty")

16        3.    In order to be "statutorily compliant," the emissions warranty must
17   provide coverage for defects "which cause the failure of a warranted part [or]
18   which would cause the vehicle's on-board diagnostic ("OBD") malfunction
19   indicator light ("MIL") to illuminate, for a period of three years or 50,000 miles,
20   whichever occurs first[.]" [13 CCR § 2037(b)(2)].

21        4.    A "warranted part" is defined as any part installed by a manufacturer
22   "which affects any regulated emission from a motor vehicle or engine[.]" [13 CCR
23   § 2035(c)(2)(B)].

24        5.    When the part is considered to be a "high-priced" warranted part, the
25   manufacturer must extend the emissions warranty from three years/50,000-miles,
26   to 7-years or 70,000-miles. [13 CCR § 2037(b)(3)].

27        6.    In an effort by Mercedes-Benz to minimize its warranty exposure,
28   Mercedes-Benz unilaterally and unlawfully limited the parts that are covered

CLASS ACTION COMPLAINT

under Mercedes-Benz's application of the California Emissions Warranty as covered by the high-priced emissions warranty, and when these parts are defective, instead of covering the parts and related repairs under the California 7-years 70,000-miles Emissions Warranty, Mercedes-Benz refuses to cover the parts under said California Emissions Warranty, harming its customers.

7.     Relevant to this case are the engine pistons installed in vehicles distributed by Mercedes-Benz in California under the Mercedes-Benz brand name ("Class Vehicles"). As set forth herein, the engine pistons in Class Vehicles are high-priced, emissions related parts which should have been covered for 7-years or 70,000-miles pursuant to the California Emissions Warranty requirements.

8.     As will be detailed further below, the California Air Resources Board has already definitively stated that engine pistons installed in internal combustion engines are emissions related parts. The total retail cost of the parts and labor to replace a engine piston installed in the Class Vehicles is such that the engine pistons are high-priced and thus covered under the 7-years or 70,000-miles California Emissions Warranty for high-priced emissions related parts.

9.     Specifically, in June of 1990, the California Air Resources Board published an emission-related parts list, which listed examples of components that were emission related parts as defined in 13 California Code of Regulations Section 1900(b)(3). In the publication, located in Section III Mechanical Components, Subsection B Combustion Chamber, the engine piston was specifically identified as being an emission related part. Furthermore, any time a engine piston installed in a Class Vehicle requires replacement, the retail cost of parts and labor for the replacement will always exceed $1,000.00, thus always exceeding the high-cost threshold. Furthermore, when a engine piston installed in a Class Vehicle is defective, the defect will cause the MIL to illuminate and will cause the Class Vehicle to fail a California smog check. Thus, engine pistons installed in Class Vehicles are "warranted parts" covered under the

California emissions warranty.

10.    As alleged in greater detail below, not only are the engine pistons installed in Class Vehicles "warranted parts," but they are "high-priced" warranted parts because the retail cost of the parts and labor to replace engine pistons exceed the "high-priced" threshold. Thus, repair or replacement is covered under the California Emissions Warranty for 7-years or 70,000-miless.

11.    Yet, in an effort to minimize its warranty costs, Mercedes-Benz has unilaterally, wrongfully, and unlawfully excluded many parts, including but not limited to engine pistons, from being covered under Mercedes-Benz's emissions warranty as "high-priced" warranted parts.  On information and belief, Mercedes-Benz has never treated engine pistons as "high-priced" warranted parts. As a result, Class Members, including Plaintiff, have wrongfully been denied warranty coverage.

12.    As a result of Mercedes-Benz's systematic refusal to provide the proper emissions warranty coverage, Mercedes-Benz wrongfully required Plaintiff, and thousands of other Class Members, to pay out-of-pocket for repairs which should have been conducted free of charge under the 7-years or 70,000-miles emissions warranty.

13.    Further, as alleged below, by failing to cover the engine pistons under the California Emissions Warranty, Mercedes-Benz also failed to provide a fully compliant California Emissions Warranty for all Class Vehicles at the time of sale, resulting in Class members overpaying for their vehicles.

14.    Plaintiff, on behalf of himself and all others similarly situated, seeks redress for Mercedes-Benz's violations of California law based on the causes of action set forth below.  By this action, Plaintiff primarily seeks an order declaring that, *inter alia*, Mercedes-Benz's current and past practices with respect to the engine piston and/or other parts as described herein do not comply with the CCRs and with the California Emissions Warranty and an injunction to remedy NNA's

misconduct directing Mercedes-Benz to, *inter alia*, provide warranty coverage for the repair and replacement of defective Class Vehicle engine pistons during the first 7-years or 70,000 miles of vehicle service.  Ancillary to that relief, Plaintiff also seeks reimbursement for, *inter alia*, all out of pocket costs paid for repairs that should have been covered specifically for the engine piston under the 7-year 70,000-mile and California Emissions Warranty.

## BACKGROUND

15.     In order to understand the widespread effect of Mercedes-Benz's unlawful conduct, it is important to identify the statutory provisions at issue.

16.     In September 1990, and pursuant to its broad authority to regulate and reduce vehicle emissions under Health and Safety Code §§ 43013(a) and 43205, CARB submitted, and the Legislature adopted, California Code of Regulations ("CCR") §§ 2035, *et seq*., otherwise known as the "Emission Control System Warranty Requirements for 1990 and Subsequent Model Year Passenger Cars, Light-Trucks, and Medium-Duty Vehicles."

17.     The Regulations require manufacturers to provide warranty coverage for defects relating to "warranted parts." As defined by the Regulations, a "warranted part" includes any part whose malfunction is required to, or can, cause the vehicle's MIL to illuminate—even though the primary function of the defective component is not directly related to emissions control. 13 CCR § 2035(c)(2)(B).

18.     The MIL is a light located on the driver's side instrument panel that, when illuminated, is amber in color and displays either a "Check Engine/Powertrain" message; a "Service Engine/Powertrain Soon" message; or the International Standards Organization's "engine symbol."

19.     The MIL illuminates to notify the driver of detected malfunctions in the vehicle's on-board diagnostic emission systems. In layman's terms, this means that when the MIL is illuminated, an emissions-related defect has been detected in

the vehicle.

20.     One type of "warranted part" is an emissions-related part. An "emissions-related part" is defined in 13 CCR § 1900(b)(3) as any automotive part which affects any regulated emission from a motor vehicle which is subject to California or federal emission standards. This includes, at a minimum, those parts identified in the "Emissions-Related Parts List," adopted by CARB on November 4, 1977, as last amended June 1, 1990.

21.     Any defect which "cause[s] the failure of a warranted part [or] which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate" is entitled, by statute, to warranty coverage "for a period of 3-years or 50,000 miles, whichever occurs first[.]" 13 CCR § 2037(b)(2).

22.     As will be further detailed below, the engine pistons installed in Class Vehicles are "warranted parts" and "emissions-related parts" because their failure causes the MIL to illuminate, and their failure increases regulated emissions.

23.     As set forth above, repair or replacement of any emissions-related components are generally covered by a California statutory 3-years or 50,000-miles emission warranty. However, if these emissions-related parts are determined to be "high-priced," then 13 CCR § 2037(c)(3) requires that the warranty coverage be extended from 3-years or 50,000 miles, to 7-years or 70,000 miles.

24.     A "high-priced warranted part" is defined as a warranted part whose individual replacement cost at the time of certification exceeds the cost limit established by the annual average nationwide urban Consumer Price Index ("CPI") for the calendar year two years prior to the model-year for which the cost limit is being calculated. [13 CCR § 2037(c)(3)]. Thus, to determine the cost limit for a high-priced warranted part in 2018, the calculation would need to utilize the annual average nationwide urban CPI for 2016.

25.     In calculating whether a particular part's individual replacement cost at the time of certification exceeds the cost limit, "the replacement cost shall be

the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis." 13 CCR § 2037(c)(1). This calculation must utilize a price-point as would be charged "in the highest-cost metropolitan area of California." 13 CCR § 2037(c)(2).

26.    This cost limit shall be calculated using the following equation:

$$\text{Cost limit}_n = \$300 \times (\text{CPI}_{n-2} / 118.3)$$

27.    Cost limit$_n$ is the cost limit for the applicable model year of the vehicle rounded to the nearest ten dollars.

28.    If, upon conducting this calculation, the price of replacement exceeds the CPI cost limit, the part is a "high-priced" warranted part, and the manufacturer is statutorily required to extend warranty coverage for the part's repair or replacement from 3-years or 50,000 miles, to 7-years or 70,000 miles. 13 CCR § 2037(b)(3).

29.    When using the methodology required by the California Code of Regulations to calculate the cost of engine piston replacement, the retail cost of parts and labor is extensive and is always *greater* than $1,000.00. However, the high-price cost limit has *never exceeded* $1,000. Thus, the cost of a engine piston replacement in a Class Vehicle always exceeds the cost limit, and the engine piston in Class Vehicles is a "high-priced" part.

30.    Because the engine pistons in Class Vehicles are "high-priced" warranted parts as defined by 13 CCR § 2037(c)(1), their repair or replacement should have been covered by Mercedes-Benz under the 7-years or 70,000 miles California Emissions Warranty. Unfortunately, Mercedes-Benz does not extend 7-years or 70,000 miles California Emissions Warranty coverage for the engine pistons installed in the Class Vehicles.

31.    While this action focuses on the engine piston specifically, Plaintiff also alleges that Mercedes-Benz has been using the wrong standard generally to determine if an emissions part, such as the engine piston, is a warranted part and is

"emissions-related," as detailed below. Mercedes-Benz also systemically has been using the wrong standard for calculating the retail labor cost in determining whether a part is a "high-priced part" under the California Code of Regulations. Instead of using the retail labor cost *i.e.*, the number of labor hours that the *customer pays* for the repair ("customer pay"), Mercedes-Benz uses, and has always used, the number of hours that the *manufacturer pays its dealers to perform the repairs under warranty* ("warranty pay"), which is a lesser amount. As a result, Mercedes-Benz is grossly understating the parts that are designated as high-priced warranted parts under the CCR, including the engine pistons.

## JURISDICTION AND VENUE

32.    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class are citizens of a state different from that of Mercedes-Benz; and (ii) aggregating the claims of individual Class members, the total matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) Mercedes-Benz is not a state, state official, or other governmental entity against whom the Court may be foreclosed from ordering relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

33.    This Court has personal jurisdiction over Mercedes-Benz because Mercedes-Benz has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court, Eastern Division, consistent with traditional notions of fair play and substantial justice.

34.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims alleged herein occurred in this District and division.

///

**PARTIES**

35.     Plaintiff Sergio Betancourt is, and at all times relevant hereto has been, an individual. At all times relevant, Plaintiff resided in San Bernardino County, California. The repairs that give rise to this action were made to Betancourt's vehicle in San Bernardino County, California.

36.     Defendant Mercedes-Benz was and is, a Delaware corporation, headquartered in Sandy Springs, Georgia, doing business in the State of California. Mercedes-Benz sells Vehicles, including the Class Vehicles, in the State of California.

37.     Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, changing circumstances and/or new facts obtained during discovery.

**SUBSTANTIVE ALLEGATIONS**

38.     Betancourt purchased and is the owner of a 2015 Mercedes-Benz C300, VIN 55SWF4JB9FU066099 ("Subject Vehicle"). The Subject Vehicle was purchased by Betancourt in the state of California and registered in the state of California.

39.     On January 28, 2022, at 51,672 miles, the Subject Vehicle was presented for repairs to Mercedes-Benz of Ontario, located at 3787 East Guasti Road, Ontario, California 91761, because the Subject Vehicle was malfunctioning. Mercedes-Benz of Ontario is a Mercedes-Benz authorized repair facility. Mercedes-Benz of Ontario determined that the cylinder 1 engine piston was cracked, causing crankcase pressure to blow oil into the cylinder, resulting in white smoke coming out of the exhaust. Mercedes-Benz of Ontario provided Plaintiff with a quote which indicated that the parts and labor to replace the engine piston far exceeded $1,000.00. Furthermore, Plaintiff was charged $215.00 to diagnose what was wrong with the Subject Vehicle. Mercedes-Benz refused to cover the engine piston repair under the California Emissions Warranty, even

though the defect related to a high-priced warranted part, even though the Subject Vehicle had been in service for less than 7-years, and even though the vehicle had been driven less than 70,000-miles. Betancourt paid the diagnostic fee out-of-pocket, and was advised that he would have to pay for the engine piston replacement. Betancourt paid the diagnostic fee, and did pay for the repairs, which cost several thousand dollars. Thus, Betancourt suffered damage.

40.     The entire cost of the diagnosis and repairs relating to the engine piston should have been covered and paid for by Mercedes-Benz under the 7-year or 70,000-miles California Emissions Warranty. This is because, pursuant to 13 CCR § 2037(c), the engine piston should have been identified as a high-priced emissions-related part, and the parts relating to that repair should have been covered under the California Emissions Warranty pursuant to under regulation 2037(c).

41.     Mercedes-Benz's failure to classify the engine pistons installed in the Class Vehicles as covered parts under the California Emissions Warranty was an omission by Mercedes-Benz designed to limit its warranty exposure.

42.     Plaintiff's experience is just one of many examples of Mercedes-Benz's scheme to avoid providing a true and comprehensive list of all parts which should be covered under either a 3-year or 50,000 mile or 7-years or 70,000-miles California Emission Warranty.

43.     The details of how Mercedes-Benz actually applied the CCR and the CCR cost limit formula with respect to engine piston replacements in the Class Vehicles are exclusively within Mercedes-Benz's possession— as is the information regarding what other parts Mercedes-Benz improperly omitted from its list of parts entitled to coverage under the California Emissions Warranty.

44.     Plaintiff presented the Subject Vehicle to a Mercedes-Benz authorized repair facility for repairs prior to the end of the 7-years or 70,000-miles California Emissions Warranty period for high-priced emissions parts. Instead of

conducting these repairs under warranty as required by the regulations, Mercedes-Benz unlawfully denied warranty coverage for the engine piston—a "high-priced" emission part which should have been covered under the 7-years or 70,000-miles California Emissions Warranty.

45.     The reason that Plaintiff was charged for the repairs was not the result of an individual oversight by Mercedes-Benz of Ontario in failing to identify the repairs as being covered under the 7-years or 70,000-miles California Emissions Warranty. Instead, Plaintiff was denied warranty coverage because Mercedes-Benz, in a systematic and organized attempt to increase profit, deceptively omitted from warranty booklets and internal dealership literature, parts which should have been identified as "emissions-related", "warranted parts" and as "high-priced" warranted parts entitled to extended statutory coverage.

46.     Pursuant to 13 CCR § 2037(c)(1)(B), Mercedes-Benz is required to identify "high-priced warranted parts…which have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)."

47.     Mercedes-Benz intentionally failed to identify all these components in order to increase profit vis-à-vis reducing the amount of money it spends on warranty-related repairs.

48.     If Mercedes-Benz complied with California law and properly identified all the parts which should have been identified as "high priced," then Mercedes-Benz dealerships would properly provide warranty coverage for high-priced warranted parts, and Plaintiff would never have paid out-of-pocket for repairs which were covered under warranty.

49.     In addition, Mercedes-Benz's failure to provide a comprehensive California Emissions Warranty that covered the engine pistons resulted in Plaintiff and the Class overpaying for their vehicles. In essence, Class Members paid for vehicles that purported to cover all required parts, including the engine pistons, pursuant to the California Emissions Warranty, but did not. Mercedes-Benz's

refusal to include in its written warranty booklets coverage for the engine pistons in Class Vehicles under the California Emissions Warranty resulted in Mercedes-Benz's unjust enrichment and detriment to Plaintiff and the Class. This is because Class Members were supposed to be provided with warranty coverage which complied with Mercedes-Benz's California Emissions Warranty obligations. A compliant warranty has a value to Class Members and has a cost to Mercedes-Benz. Instead of Mercedes-Benz providing a compliant warranty, Mercedes-Benz has provided a deficient warranty which does not cover the engine pistons under the California Emissions Warranty, which Mercedes-Benz is lawfully obligated to cover. The non-compliant warranty provides less coverage and thus exposes Class Members to more financial risk and is less valuable to Class Members. Similarly, the non-compliant warranty costs Mercedes-Benz less money, because it exposes Mercedes-Benz to less risk and will result in Mercedes-Benz paying out less in warranty claims.

50.    Class Members were entitled to a compliant California Emissions Warranty but were provided with a deficient warranty. As a result, Mercedes-Benz has been unjustly enriched by providing a deficient warranty which reduced Mercedes-Benz's costs, and Class Members have been damaged by not receiving the warranty that they were legally entitled to receive.

51.    In fact, irrespective of whether a Class Member's Class Vehicle underwent a repair to a engine piston defect, Class Members were sold cars which were worth less than what Class Members actually paid for, by virtue of Mercedes-Benz's systematic failure to provide a warranty that covered the engine pistons under the California Emissions Warranty.

52.    Mercedes-Benz's conduct violates the Unfair Competition Law, California Business and Professions Code section 17200, et seq. (the "UCL") as well as the Consumer Legal Remedies Act, California Civil Code Section 1750, et seq., (the "CLRA").

53.    Plaintiff and other members of the Class have suffered damage as a result of Mercedes-Benz's wrongful conduct as alleged herein and therefore have standing.

54.    Plaintiff's harm is continuing. As described herein, MBUSA is systemically continuing to fail to properly identify all parts that should properly and correctly be covered under the California Emissions Warranty as emissions-related parts and/or high-priced parts. These parts include the parts identified in the "OBD2 Summaries" (also referred to as "OBDII Summaries"), parts identified under "Appendix B" (as described below) and parts that increase regulated emissions that are not currently covered under MBUSA's California Emissions Warranty.

55.    Plaintiff would purchase another Mercedes vehicle. Due to MBUSA's continuing conduct, however, he is unable to rely on MBUSA to properly identify all parts that should properly be covered under the California Emissions Warranty and thus Plaintiff will have no way of knowing whether MBUSA, in fact, is complying with the California Emissions Warranty as required. Further, absent injunctive relief, Plaintiff will not know whether it makes sense to spend his money on a new Mercedes vehicle on account of MBUSA's non-compliance with the California Emissions Warranty and he will have to deal with the same sort of warranty coverage issues again, and, if he does purchase another Mercedes vehicle, Plaintiff might reasonably, but incorrectly assume that MBUSA complied with all the requirements of the California Emissions Warranty, when it did not. To the extent that Plaintiff does not purchase another Mercedes vehicle, it will be because, at least in part, he is unable to rely on MBUSA to comply with the requirements of the California Emissions Warranty.

**CARB DECLARATON**

56.    CARB has provided a Declaration from Allen Lyons, who, at the time the Declaration was made, was the Chief of the Emissions Certification and

Compliance Division of CARB regarding the California Emissions Warranty. The Declaration (hereinafter, the "CARB Declaration") was made "for the sole purpose of educating the Courts about CARB's interpretation and implementation of California's warranty requirements." The CARB Declaration sets forth CARB's interpretation of certain of the foregoing CCR provisions, including how to define a "warranted part" and a "high-priced" warranted part for purposes of the California Emissions Warranty.

57.    The CARB Declaration states, in relevant part, that "warranted parts" under the California Emissions Warranty "include any components that can or are required to illuminate the OBD Malfunction Indicator Light (MIL) in the event of a malfunction, even if the primary function of the component is not emission control, within the warranty period. (Cal. Code Regs., tit. 13, § 2037, subd. (b)(2).) The MIL is a light located on the driver's side instrument panel that, when illuminated, is amber in color and displays "Check Engine/Powertrain," "Service Engine/Powertrain Soon," or the International Standards Organization (ISO) engine symbol; the MIL illuminates to notify the driver of detected malfunctions of OBD-monitored emissions systems on the vehicle. (Cal. Code Regs., tit. 13, § 1968.2, subds. (a), (d)(2.1.1) & (2.2.).)"

58.    The CARB Declaration also clarifies the standard for determining whether a warranted part is emissions-related. According to CARB, as set forth above, any vehicle part that causes the MIL to illuminate and/or affects regulated emissions is an emissions-related part under the California Emissions Warranty law. This is not the standard that Mercedes-Benz has been using.

59.    The CARB Declaration further provides that "When calculating the cost of labor portion of the replacement cost equation, in order to determine if a part is a "high-priced" warranted part for the purposes of California Code of Regulations, title 13, section 2037, subdivision (c), manufacturers first calculate the amount of time it would take to diagnose and repair or replace the part (the

labor hours). A dollar amount is then attributed to the number of labor hours to come up with a cost of labor for each part. In doing this, manufacturers should use the labor hours and associated costs that would be charged to consumers to perform any required diagnosis and repairs to or replacement of the part, not the labor hours that manufacturers' service dealerships are allowed to charge manufacturers."

60.     Thus, based on the CARB Declaration, Mercedes-Benz is required to provide 7-years or 70,000-miles warranty coverage for all components whose failure affects any regulated emission and can or are required to illuminate the MIL, even if the primary function of the component is not emissions control, and which are considered high-priced based on the amount a consumer would pay for the parts and labor associated with a defective component's diagnosis and replacement.

61.     Although the engine pistons installed in Class Vehicles affects regulated emissions and is considered a high-priced emissions related part, as further set forth below, Mercedes-Benz, as a matter of custom and practice, has failed to cover engine pistons installed in Class Vehicles for 7-years or 70,000-miles as required by the CCR.

62.     Further, as set forth above, MBUSA has an obligation to provide 7-year/70,000- mile coverage under the California Emissions Warranty for all "high-priced" emissions-related components. MBUSA is supposed to determine if a component is high-priced by analyzing the cost to the consumer to diagnose and repair the component, including what the consumer would pay for parts and labor.

63.     As part of the certification process for a vehicle, the manufacturer determines which parts it considers to be "emissions parts" and submits a list of those parts to CARB. Section 2037(c). At the same time, the manufacturer also identifies the parts from the emissions parts list that the manufacturer has determined, based on the cost calculation set forth in the CCR, exceeds the cost

limit and therefore are "high-priced" parts entitled to extended 7- year/70,000-mile coverage.

64.     California Code of Regulations Section 2037(c)(1) states, in relevant part, that in calculating whether an individual replacement cost at the time of certification exceeds the cost limit, "the replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis." Emphasis added. Similarly, Section 2037(c)(2) states that "the replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis." Emphasis added.

65.     As the CARB Declaration confirms, when calculating the retail cost of labor portion of the replacement cost equation, in order to determine if a part is a "high-priced" warranted part for the purposes of complying with the California Code of Regulations, "manufacturers should use the labor hours and associated costs that would be charged to consumers to perform any required diagnosis and repairs to or replacement of the part, not the labor hours that manufacturers' service dealerships are allowed to charge manufacturers." This is also consistent with the language in the CCRs which states that the "the replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis."

66.     However, MBUSA does not use, and has never used, the retail labor cost i.e., the number of labor hours that the customer pays for the repair ("customer pay"). Instead, MBUSA incorrectly uses the number of hours that the manufacturer pays its dealers to perform the repairs under warranty ("warranty pay"). MBUSA is using the wrong standard and, in so doing, is failing to the comply with the express terms of the CCR.

**A PISTON'S FUNCTION AND IMPACT ON EMISSIONS**

67.     A piston as used inside an internal combustion gasoline engine is a lubricated sliding shaft that fits tightly inside a cylinder. The cylinder is also

referred to as a combustion chamber. The piston's purpose is to compress a gasoline-air mixture, then when the compressed gasoline-air mixture is compressed, it is ignited by a spark generated from a spark plug, creating a small explosion. When the small explosion occurs, the piston's purpose is to transfer the force generated by the small explosion into energy. The transfer of energy occurs because downward pressure is placed on the piston from the explosion. The piston is connected by a connecting rod to a crankshaft. When the small explosion occurs, the piston is forced in a downward motion, turning the crankshaft in a spinning motion. The spinning motion is ultimately transferred through the transmission, driveshaft and axles, to the wheels of a vehicle, causing forward and reverse vehicle motion. Modern internal combustion vehicle engines usually have between 4 and 8 pistons, depending on engine and vehicle size. All of the engine's pistons work in harmony with each other and are connected to the crankshaft.

68.     In order for the piston to be able to compress the gasoline-air mixture, the piston and combustion chamber must create a sealed environment, so that when the piston slides up, no gasoline or air leaks outside of the combustion chamber, causing the gasoline and air to compress. If any gasoline or air leak outside of the combustion chamber, the gasoline and air that leak out are wasted and not transferred into energy to drive the vehicle. This results in an increase in regulated emissions. Furthermore, because the gasoline and air that does ignite inside the combustion chamber is not the intended quantity of gasoline and air, and because the pounds per square inch of compression is not as intended, the small explosion that is generated is not as powerful as it would otherwise be, again increasing regulated emissions. Finally, the aforementioned leaking that occurs if the piston and combustion chamber are not a sealed invironment may also cause engine misfire, which increases regulated emissions.

69.     Similarly, if the piston and combustion chamber do not create a sealed environment, when the gasoline and air ignite, creating the small explosion

1    inside the combustion chamber, some of the pressure generated by the small

2    explosion leaks. The leaked pressure reduces the amount of force being applied to

3    the piston. This reduces the velocity of the piston's downward motion, wasting the

4    power that is generated, and increasing regulated emissions.

5        70.    When a piston has a crack, hole, or structural defect ("Piston

6    Defect"), the Piston Defect will typically result in the combustion chamber no

7    longer being a sealed environment, resulting in an increase in regulated emissions.

8    As a result, the automotive industry as well as CARB regard pistons as emissions-

9    related parts.

10       71.    In June of 1990, CARB published an emission-related parts list,

11   which listed examples of components that were emission related parts as defined

12   in 13 California Code of Regulations Section 1900(b)(3). In the publication,

13   located in Section III Mechanical Components, Subsection B Combustion

14   Chamber, the engine piston was specifically identified as being an emission

15   related part.

16       72.    Furthermore, the engine pistons installed in Class Vehicles are

17   "warranted parts" and "emissions-related parts" because their failure triggers an

18   OBD fault code and causes the MIL to illuminate, and their failure increases

19   regulated emissions, as stated herein.

20       73.    The foregoing framework and analysis addresses and precludes any

21   potential "slippery slope" argument or concern that every vehicle part could

22   potentially be "emissions-related." CARB has specifically stated that engine

23   pistons are "emission-related." Thus, engine pistons are required to be covered

24   under the California emissions warranty.

25       74.    MBUSA is well aware of what component failures cause a MIL to

26   illuminate and cause an increase in regulated emissions. MBUSA's conduct in this

27   case underscores its failure to comply with the Regulations. The failed engine

28   piston installed in Plaintiff's Vehicle caused an emissions-related fault code

CLASS ACTION COMPLAINT

(which, on information and belief, has been identified by MBUSA on MBUSA's OBDII fault codes summaries submitted to CARB) to be triggered, the MIL to illuminate and an increase in regulated emissions. Yet, MBUSA fails to provide Emissions Warranty coverage for this component, which is also illustrative of MBUSA's systemic failure to provide coverage for numerous other components in the entire line of vehicles distributed by MBUSA.

## ENGINE PISTONS ARE HIGH-PRICED WARRANTED PARTS

75.     As part of the certification process for a vehicle, the manufacturer determines which parts it considers to be "emissions parts" and submits a list of those parts to CARB. Section 2037(c). At the same time, the manufacturer also identifies the parts from the emissions parts list that the manufacturer has determined, based on the cost calculation set forth in the CCR, exceeds the cost limit and therefore are "high-priced" parts entitled to extended 7- year/70,000-mile coverage.

76.     California Code of Regulations Section 2037(c)(1) states that in calculating whether an individual replacement cost at the time of certification exceeds the cost limit, "the replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis." Similarly, Section 2037(c)(2) states that "the replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis."

77.     When using the methodology required by the California Code of Regulations to calculate the cost of engine piston replacement, the retail cost of parts and labor is extensive and is always *greater* than $1,000.00. However, the high-price cost limit as calculated by CARB and disclosed every year by CARB has *never exceeded* $1,000. Thus, the cost of a engine piston replacement in a Class Vehicle always exceeds the cost limit, and the engine piston in Class Vehicles is a "high-priced" part.

78.     Specifically, with regard to the Subject Vehicle, according to Alldata

Repair, a subscripton based repository of information regarding automotive repair costs, the consumer labor cost to replace one piston is no less than 27.3 hours of labor. Even using an hourly rate of $100.00 per hour, which understates the hourly rate paid by consumers in 2015, the labor cost alone to replace one piston exceeds $2,700.00. Thus, with regard to all Class Vehicles, the piston is a high-priced part.

79.    Because the engine pistons in Class Vehicles are "high-priced" warranted parts as defined by 13 CCR § 2037(c)(1), their repair or replacement should have been covered by Mercedes-Benz under the 7-years or 70,000 miles California Emissions Warranty. Unfortunately, Mercedes-Benz does not extend 7-years or 70,000 miles California Emissions Warranty coverage for the engine pistons installed in the Class Vehicles.

80.    With regard to Plaintiff's vehicle, On January 28, 2022, at 51,672 miles, the Subject Vehicle was presented for repairs to Mercedes-Benz of Ontario. Mercedes-Benz of Ontario determined that the cylinder 1 engine piston was cracked, causing crankcase pressure to blow oil into the cylinder, resulting in white smoke coming out of the exhaust. Mercedes-Benz of Ontario provided Plaintiff with a quote which indicated that the parts and labor to replace the engine piston far exceeded $1,000.00.

81.    Since the cost to replace engine piston 1 was above the high-priced cost limit, and because the engine piston is an emissions related part as set forth herein, the engine piston is a high-priced warranted part which should have been covered for 7-years or 70,000-miles pursuant to the California Emissions Warranty.

82.    Furthermore, the cost to replace the engine piston for all model year Class Vehicles is above the high-priced warranted part threshold in the model years they were produced.

83.    Thus, by failing to provide a 7-years or 70,000-miles warranty for the engine piston in Class Vehicles, Mercedes-Benz violated the UCL and the CLRA.

## CLASS ACTION ALLEGATIONS

84.     Plaintiff re-alleges and incorporates by reference each allegation set forth above.

85.     Plaintiff brings this action on his own behalf, as well as on behalf of all Class members similarly situated, pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(1), (2) and/or (3) and/or (c)(4).

86.      Plaintiff reserves the right to redefine the Class and Subclasses and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

87.     Mercedes-Benz's California Emission Warranty applies to vehicles purchased and registered in States which, in the year the vehicle was distributed, had adopted the California Emissions Warranty, i.e., "Reg. 177 States" or "Section 177 States".

88.     Defendant's emissions warranty representations arise out of California law that Defendant must apply outside of California to the vehicles in the States listed. Accordingly, Defendant's conduct was specifically intended to have effects outside of California and was specifically intended to apply to vehicles and members of the Classes in those States that Defendant chose to include by the express terms of the California Emissions Warranty.

89.     Under these unique circumstances, California has a specific interest in regulating conduct outside of California that specifically invokes California emissions requirements and California emissions regulations and has an interest in preventing illegal practices that involve breach of California Emissions Warranty law that Defendant has chosen to invoke outside of California in the States covered by the Reg. 177 Class and Subclass. As Defendant seeks to apply the California Emission System Warranty to members of the Classes and vehicles in the listed States outside of California, members of the Classes in those States likewise should be included in a claim that seeks to vindicate their rights under

that same warranty in California and should have the ability to have their rights under that warranty asserted in California and pursuant to California law.

90.    Mercedes-Benz's own express application of the California Emissions Warranty constitutes a sufficient connection between California and out-of-state potential Class members. Further, Mercedes-Benz's misconduct, namely, Mercedes-Benz's failure to identify all emissions-related, high-priced warranted parts to CARB, a California regulator, occurred in California, and even out-of-state purchasers were harmed by Mercedes-Benz's conduct that occurred in California. Mercedes-Benz failed to disclose, in its submissions to CARB, the parts that are properly covered by the California Emissions Warranty, including, but not limited to, engine pistons.

91.    Mercedes-Benz is solely responsible for selecting and identifying to CARB all of the parts that should be classified as "high-priced" emissions warranted parts, and high-priced warranted parts, and Mercedes-Benz failed to include the engine piston and other components. Californians and out-of-state potential Class members in the additional States covered by the California Emissions Warranty suffered an identical harm – they were forced to pay the costs of engine piston defect diagnosis, repair, or replacement, which should have been covered under the California Emissions Warranty, and were provided with warranties which were less valuable than the warranties they were legally entitled to at the time they purchased or leased their Class Vehicle. Under these unique circumstances, California has the greater interest in applying California's consumer laws to enforce compliance with the California Emissions Warranty than the other States have in using their consumer laws to enforce the same Regulation. California has a specific interest in regulating conduct outside of California that invoke California emissions requirements and regulations, and California has an interest in preventing illegal practices that involve breach of California emissions law that Defendant has chosen to invoke outside of

California in the specific States covered. California also has a supreme interest in applying its own consumer protection laws in ensuring that the California Emissions Warranty is properly interpreted and applied wherever Mercedes-Benz has chosen to invoke it.

92.    Under the facts of this case, the law of California should be applied because California's interest would be impaired if its consumer laws to enforce the California Emissions Warranty were subordinated to consumer laws of the other States. Other jurisdictions' interests in applying their own consumer protection laws to their own residents do not strongly outweigh the interest California has in applying its consumer protection laws to enforce the California Emission Warranty with respect to the specific potential out-of-state members of the Classes identified herein. Therefore, the Classes alleged herein include persons who purchased or leased Class Vehicles that are registered in States other than California.

93.    There is sufficient similarity among all the Class Vehicles and Mercedes-Benz's conduct as defined herein in that, among other things, all of the vehicles in the proposed Classes are subject to the same California Emissions Warranty and the same requirements that Mercedes-Benz report all emissions-related defects to CARB pursuant to the CCR. Mercedes-Benz has acted in a uniform manner with respect to all Class Vehicles by failing to properly cover engine pistons in the Class Vehicles as required under the California Emissions Warranty and as described herein.

94.    Accordingly, Plaintiff's proposed Class and Subclasses consist of and are defined as follows:

California Class and Subclass:

> All persons in the State of California who have been owners or lessees of Class Vehicles and whose engine pistons are not covered for 7-years or 70,000-miles (the "California Class").

All persons in the State of California who have been
owners or lessees of Class Vehicles and who have paid
for repairs and parts pertaining to defective engine pistons
which occurred outside of the Class Vehicle's new car
warranty period but prior to 7-years or 70,000-miles (the
"California Out-of-Pocket Subclass").

Reg. 177 Class and Subclass:

All persons who have been owners or lessees of Class
Vehicles in a State which, in the year their vehicle was
distributed, had adopted the California Emissions
Warranty (i.e., "Reg. 177 States" or "Section 177 States)
and whose engine pistons are not covered for 7-years or
70,000-miles (the "Reg. 177 Class").

All persons who have been owners or lessees of Class
Vehicles in a State which, in the year their vehicle was
distributed, had adopted the California Emissions
Warranty (i.e., "Reg. 177 States" or "Section 177 States)
and who have paid for repairs and parts pertaining to
defective engine pistons which occurred outside of the
Class Vehicle's new car warranty period but prior to 7-
years or 70,000-miles (the "Reg. 177 Out-of-Pocket
Subclass").

Excluded from the Classes and Subclasses are Defendant,
and its subsidiaries and affiliates; its current and former
officers, directors, and employees (and members of their
immediate families); and the legal representatives, heirs,
successors or assigns of any of the foregoing. Also
excluded are any judge, justice, or judicial officer
presiding over this matter and the members of their
immediate families and judicial staff.

95.    Plaintiff's primary goal on behalf of the Classes is to obtain
injunctive relief requiring MBUSA to comply with the California Emissions
Warranty and declaratory relief with respect to the proper interpretation of the
California Emissions Warranty and MBUSA's obligations pursuant to the CCRs
and the California Emissions Warranty. Plaintiff's claim for monetary relief is
secondary to her claim for injunctive or declaratory relief. Even in the absence of
possible monetary recovery, Plaintiff would bring this action to obtain the

1    injunctive and declaratory relief sought. Any monetary relief that would flow to

2    the members of the Classes would be ancillary to the injunctive or declaratory

3    relief obtained.

4         96.    On behalf of the members of the Classes, Plaintiff seeks declaratory

5    judgment/relief pursuant to 28 U.S.C. section 2201 et seq as to, *inter alia*, (1) that

6    the engine piston in the Class Vehicles is an 'emissions-related part" and high-

7    priced" warranty part; (2) that MBUSA has used, and continues to use, the wrong

8    or incorrect standards for identifying "emission-related" parts and "high-priced

9    warranty parts" under the California Emissions Warranty; (3) that MBUSA failed

10   and is failing to properly identify and warrant under the California Emissions

11   Warranty all of the parts, components or systems in addition to the engine piston,

12   that should have been properly covered for emissions-related defects as identified,

13   *inter alia*, per the fault codes on the Class Vehicles OBD2 Summaries described

14   herein, per Appendix B to the CARB regulations and/or as high-priced warranty

15   parts; and/or, (4) that Plaintiff and members of the Classes are entitled to warranty

16   coverage under California Emissions Warranty for all Mercedes vehicle parts not

17   properly identified as warranted parts under the California Emissions Warranty as

18   described or defined herein.

19        97.    On behalf of the members of the Classes, Plaintiff seeks

20   reimbursement or restitution for the out of pocket expenses, including diagnostic

21   fees for amounts wrongfully paid by Plaintiff and members of the Classes relating

22   to repairs that should have been covered by the MBUSA California Emissions

23   Warranty during the Class periods. Plaintiff's claim for restitution is distinct from

24   her claim for damages. The damages claim under the CLRA seeks, inter alia, the

25   diminished value of a California Emissions Warranty that does not cover all parts

26   that should properly be included in the California Emissions Warranty. Moreover,

27   Plaintiff does not seek the same sum in restitution as she seeks in damages, and

28   the two remedies do not compensate for the same harm. The restitutionary

CLASS ACTION COMPLAINT

remedy, which seeks out of pocket reimbursement, will not compensate Plaintiff and members of the Classes for damages incurred due to the Class Vehicles having a California Emissions Warranty that has less value because the Warranty does not properly cover all parts that should properly be covered under the California Emissions Warranty and will not compensate for the excess amounts and profits that MBUSA pocketed due to its misconduct and in being able to avoid paying warranty claims that should have been covered under the California Emissions Warranty.

98.    The damages remedy under the CLRA also is not an adequate remedy at law for the equitable claims alleged herein under the UCL. "Damages" under the CLRA are for actual damages as described herein and distinct from a "restitution" remedy under the UCL which compensates Plaintiff and members of the Classes for out of pocket losses. The same recovery available for "restitution" under the CLRA is not available as "damages" under the CLRA because the monetary recoveries address different losses. Moreover, Plaintiff and members of the Classes do not seek the same amount in restitution as they seek in damages.

99.    Further, the harm suffered by Plaintiff and members of the Classes and perpetrated by MBUSA, is not adequately compensable with damages. The entire purpose of the California Emissions Warranty is to protect the environment. The California Emissions Warranty was enacted by the State of California to restrict harmful greenhouse gas from gasoline and hybrid gasoline engines. The fundamental purpose of the emissions requirements is to reduce emissions, limit fuel consumption and increase fuel efficiency, by forcing manufacturers to repair and/or replace failed emissions-related vehicle components under warranty, thereby decreasing greenhouse gas emissions, including carbon dioxide emissions. 169. Indeed, motor vehicle use is the single greatest source of U.S. air pollution and is the cause of more air pollution than any other human activity. (Cars, Fuels, and Clean Air: A Review of Title II of the Clean Air Act Amendments of 1990

(1991) 21 Envtl. L. 1947, 1949). Many of these pollutants consist of hydrocarbons and nitrous oxides which react to form photochemical oxidants in the atmosphere. The most notorious of these photochemical oxidants is ozone – the primary component of urban smog. (California Air Resources Bd., Staff Report: Proposed Regulations for Low-Emission Vehicles and Clean Fuels (Aug. 13, 1990) at p. 3). Cars also produce nearly two-thirds of all carbon dioxide emissions. Carbon dioxide content in the atmosphere is closely linked to global temperature because the temperature of the Earth is primarily determined by the balance between its absorption of energy from the Sun, and the reflection of a portion of this energy back into space. Carbon dioxide – a greenhouse gas – traps the energy and heat which would have otherwise escaped back into space, and re-emits it, causing the warming of our atmosphere. This process is known as the "greenhouse effect."

100.    Therefore, the State of California highly regulates emissions from gasoline and hybrid gasoline engines, specifically greenhouse gas emissions. In September 1990, pursuant to its broad authority to regulate and reduce environmentally harmful vehicle emissions under Health and Safety Code §§ 43013(a) and 43205, CARB submitted, and the Legislature adopted, California Code of Regulation §§ 2035, et seq., which requires all manufacturers to provide a statutorily compliant emissions warranty to all vehicles distributed and registered in California.

101.    In September 2004, CARB approved the "Pavley" Greenhouse Gas Regulations to control greenhouse gas emissions from new LEV II vehicles beginning with the 2009 model year. These Greenhouse Gas Regulations added four greenhouse gas air contaminants to the vehicular criteria and toxic air contaminant emissions that California was already carbon dioxide ($CO_2$), methane ($CH_4$), nitrous oxide ($N_2O$), and hydrofluorocarbons (air conditioner refrigerants). The State and federal government have specifically focused on regulating greenhouse gas emissions, including carbon dioxide emissions. If a gas vehicle

1   has a defect which increases fuel consumption, that defect increases carbon

2   dioxide emissions.

3       102.    Notwithstanding State and federal regulations designed to protect our

4   air, monitoring shows that over 90 percent of Californians breathe unhealthy

5   levels of one or more air pollutants during some part of the year. Despite CARB's

6   best efforts, in 2020, "there were 157 bad air days for ozone pollution—the

7   invisible, lung-searing gas in smog—across the vast, coast-to-mountains basin

8   spanning Los Angeles, Orange, Riverside and San Bernardino counties. That's the

9   most days above the federal health standard since 1997." (Barboza, Tony (Dec. 6,

10  2020) L.A. Began 2020 With A Clean-Air Streak but Ended with Its Worst Smog

11  in Decades, Los Angeles Times [https://www.latimes.com/42alifornia/story/2020-

12  12-06/2020-laair-quality-southern-california-pollution-analysis].) One of the

13  reasons that our environment is in such a state of crisis is that corporations are not

14  following our very thoroughly formulated rules.

15      103.    Accordingly, damages are inadequate to compensate for the

16  foregoing harms caused by MBUSA's violation, and continuing violation, of the

17  California Emissions Warranty. Money damages will not fix the harm caused by

18  Defendant's violation of emissions laws, which requires equitable relief.

19      104.    Further, MBUSA and car manufacturers should not be able to shirk

20  their legal responsibilities simply by paying damages. Simply paying off

21  consumers undermines the entire purpose of the California Emissions Warranty

22  and will leave MBUSA in the position of being able to continue to violate the law

23  and increase harmful vehicle emissions by just paying damages. Ironically, this

24  result will leave Plaintiff and members of the Classes in an even worse

25  position than by simply receiving monetary compensation alone.

26      105.    Moreover, payment of damages does not ensure that the emissions

27  parts will actually be repaired. That result will only be ensured by forcing

28  MBSUA to cover the repair under the California Emissions Warranty as required.

106.   Further, equitable relief is required because damages alone will not be sufficient for Class members to identify all parts whose defects result in fault codes identified in the OBD2 Summaries being triggered. Only MBUSA has done the analysis and knows the fault code logic that would allow for identification of all required fault codes to CARB and all parts that give rise to those fault codes so that those parts can be identified and properly covered under the California Emissions Warranty. In effect, Plaintiff's request for equitable relief is the only way to get MBUSA to do what it is required to do.

107.   There are common questions of law and fact as to members of the Class and Subclasses that predominate over questions affecting only individual members, including, but not limited to:

(a)    Whether Mercedes-Benz has failed and is failing to acknowledge that the engine pistons installed in the Class Vehicles should be covered under the 7-year, 70,000-mile California Emissions Warranty, pursuant to California law;

(b)    Whether Mercedes-Benz's failure to comply with the California Emissions Warranty by failing to provide a 7-year, 70,000-mile California Emissions Warranty for the engine pistons installed in the Class Vehicles damaged Class members when they purchased or leased a Class Vehicle with a less valuable warranty than they were entitled to;

(c)    Whether Mercedes-Benz engaged in and is engaging in a systematic business practice of failing to identify that the engine pistons installed in the Class Vehicles should be covered under the 7-year, 70,000-mile California Emissions Warranty, pursuant to California law;

///

///

(d)    Whether Mercedes-Benz's conduct is an unlawful and unfair business practice in violation of California Business & Professions Code section 17200, *et seq*.;

(e)    Whether Mercedes-Benz's conduct is a violation of California Business & Professions Code section 1750, *et seq*.;

(f)    Whether Plaintiff and Class members are entitled to declaratory and injunctive relief regarding Mercedes-Benz's failure to identify that the engine pistons installed in the Class Vehicles should be covered under the 7-year, 70,000-mile California Emissions Warranty, pursuant to California law;

(g)    The appropriate remedy for Mercedes-Benz's violations of California law.

108.    There is a well-defined community of interest in the litigation and the Class members are readily ascertainable:

(a)    Numerosity: The Class members are so numerous that joinder of all Class members would be unfeasible and impractical. The membership of the entire Class is unknown to Plaintiff at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

(b)    Typicality: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom he has a well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all Class members as demonstrated herein.

(c)    Adequacy: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff acknowledges that he has an obligation

CLASS ACTION COMPLAINT

to make known to the Court any relationship, conflicts or differences with any Class member. Plaintiff's attorneys, the proposed Class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class member.

(d)     Superiority: The nature of this action makes the use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

## TOLLING OF THE STATUTE OF LIMITATIONS

109.    Mercedes-Benz engaged in misleading and dishonest conduct relating to its failure to identify all of the parts, including the engine pistons, that should be covered pursuant to the California Code of Regulations regarding the 7-years 70,000-miles California Emissions Warranty. Despite acting diligently, Plaintiff and Class members lacked the resources and had no realistic ability to identify the specific parts that should have been covered. Plaintiff and Class members cannot be reasonably expected on their own to learn or discover what parts should be covered under the California Emissions Warranty. Therefore, the delayed discovery rule is applicable to the claims asserted by Plaintiff and Class members, and the statute of limitations for bringing the claims set forth herein should be tolled.

110.    Mercedes-Benz has actual and constructive knowledge that it is violating California law by failing to identify all of the parts that should be

covered under the California Emissions Warranty. Mercedes-Benz has concealed

from Plaintiff and Class members that Mercedes-Benz is violating California law

as set forth herein. Any applicable statute of limitation is tolled by Mercedes-

Benz's wrongful conduct set forth herein, and Mercedes-Benz is estopped from

relying on any statute of limitation because of its conduct.

**FIRST CAUSE OF ACTION**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

**By Plaintiff, the California Class, and the Reg. 177 Class Against All
Defendants**

111.   Plaintiff re-alleges and incorporates by reference each allegation set forth above.

112.   California Business and Professions Code section 17200, et seq. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Mercedes-Benz has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

113.   The UCL imposes strict liability. Plaintiff need not prove that Mercedes-Benz intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

114.   Mercedes-Benz is a "person" as defined by Business & Professions Code § 17201.

115.   As a direct and proximate result of Mercedes-Benz's acts and practices in violation of the UCL, Plaintiff and members of the Classes have suffered injury in fact and lost money or property as set forth above and will continue to do so.

///

///

///

**Unlawful Prong**

116.    A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including standard of professional conduct. The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

117.    Mercedes-Benz failed to comply with the California Emissions Warranty requirements pursuant to the CCR by failing to provide 7-year and 70,000-mile warranty coverage for the engine pistons installed in the Class Vehicles where coverage should be provided pursuant to the CCR. The California Emissions Warranty applies to all Class Vehicles. 13 CCR 2037(a). Pursuant thereto, manufacturers shall warrant that vehicles conform with the California Air Resources Board regulations, and are free from defects which cause the failure of a warranted part to perform as described in the application for certification, including defects which would cause the vehicle's on-board diagnostic malfunction indicator to illuminate, for 3 years or 50,000 miles. 13 CCR 2037(b)(1)- (2). The vehicle manufacturer is Mercedes-Benz, which is the manufacturer granted certification for the Class Vehicles. 13 CCR 2035(c)(5). The parts at issue are all warranted parts. The warranty period shall be 7-years and 70,000-miles for high-priced emissions parts. 13 CCR 2037(b)(3). High-priced emissions parts are those parts which, when taking into consideration the cost to diagnose, replace and pay for the failed part, exceed the cost limit defined in 13 CCR 2037(c)(3). The California Air Resources Board published memos which calculated the cost limit for the Class period. Although the engine pistons installed in the Class Vehicles exceeded the cost limit for the correlating years and should have received California Emissions Warranty coverage, Mercedes-Benz failed to provide 7-year and 70,000-mile warranty coverage for said parts. The failure has resulted in damage to Plaintiff and members of the Classes.

///

118.    Mercedes-Benz did not designate the parts at issue as "emissions-related" and/or high-priced warranted parts that should be covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty. Thereby, Mercedes-Benz also was able to avoid identifying the engine pistons installed in the Class Vehicles as defined herein where coverage should be provided pursuant to the CCR as being high-priced warranted parts in the warranty books for the Class vehicles, which purport to identify all parts covered under the high-priced California Emissions Warranty for 7 years and 70,000 miles. Thus, Mercedes-Benz's violation of Section 2037(c)(1)(B) directly affected communications with consumers. By violating Section 2037(c)(1)(B), Mercedes-Benz was able to avoid disclosing in the warranty books the engine pistons that should have been included as high-priced warranted parts.

119.    Mercedes-Benz's acts of unlawful competition as set forth above have caused members of the Classes to suffer damage, present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, inter alia, C.C.P. Section 1021.5.

**Unfair Prong**

120.    Mercedes-Benz's conduct violates the unfair prong of the UCL. An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition and is not an injury the consumers themselves could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions. Mercedes-Benz's conduct violates all of these definitions.

///

CLASS ACTION COMPLAINT

121.   As alleged above, Mercedes-Benz engages and has engaged in a systematic business practice of intentionally failing to identify in the Class Vehicles' warranty books at the time of distribution, and in resources provided to its dealerships, numerous parts that Mercedes-Benz is obligated to identify as high-priced warranted parts and emission related parts by operation of law, including specifically the engine pistons installed in the Class Vehicles where coverage should be provided pursuant to the CCR. Mercedes-Benz does this in an effort to reduce the amount of money that Mercedes-Benz spends on warranty-related repairs knowing that it would be very difficult if not impossible for most consumers to discover this unlawful conduct. If Mercedes-Benz complied with California law and properly identified the engine piston as a high-priced warranted part, then Mercedes-Benz dealerships would properly provide warranty coverage for them. Further, Mercedes-Benz's conduct is unfair because it intentionally refuses to provide warranty coverage for the engine pistons installed in the Class Vehicles as defined herein for the sole purpose of wrongfully limiting its warranty claims, with no regard for the fact that the public is being forced to pay for repairs which should be covered under the 7-year and 70,000-mile California Emissions Warranty. Plaintiff and members of the Classes have suffered injury in fact and lost money or property as a result of Mercedes-Benz's unfair business acts and practices as set forth in detail.

122.   Mercedes-Benz's failure to properly identify the engine pistons installed in the Class Vehicles where coverage should be provided pursuant to the CCR, is a uniform, systematic, and intentional business practice on the part of Mercedes-Benz to minimize the amount of money that Mercedes-Benz has to pay out in warranty claims. This conduct violates California law.

123.   As a direct and proximate result of Mercedes-Benz's acts and practices in violation of the UCL, Plaintiff and members of the Classes have paid out of pocket to repair or replace engine pistons installed in the Class Vehicles

CLASS ACTION COMPLAINT

where coverage should be provided pursuant to the CCR and/or other high-priced warranted parts and emissions related parts as defined herein that should have been covered by Mercedes-Benz under the 7-year and 70,000-mile California Emissions Warranty. As a result, consumers were denied warranty coverage, which is unfair.

124.   Mercedes-Benz's conduct does not benefit consumers or competition. Plaintiff and members of the Classes could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial. Mercedes-Benz's conduct only benefits Mercedes-Benz, by Mercedes-Benz wrongfully avoiding having to pay warranty claims which should be covered by the California Emissions Warranty.

125.   The gravity of the consequences of Mercedes-Benz's conduct as described above outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous. Mercedes-Benz's conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding the California Emissions Warranty, or is substantially injurious to the public, for the reasons set forth above.

126.   To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to Mercedes-Benz's justification and motives for its conduct, and as to the impact of Mercedes-Benz's conduct on Plaintiff and members of the Classes.

127.   Mercedes-Benz's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, inter alia, C.C.P. § 1021.5.

///

**Deceptive Prong**

128.   Plaintiff's claim under this prong is predicated on omissions, not misrepresentations. While the warranty booklets for Class Vehicles claim to identify all of the parts covered under the 7-year and 70,000-mile California Emissions Warranty, the warranty books omit the engine pistons installed in the Class Vehicles that should have been listed as covered by the 7-years 70,000-mile California Emissions Warranty pursuant to the CCR.

129.   Mercedes-Benz engages in a uniform and systematic business practice of intentionally failing to identify in the Mercedes-Benz warranty books, and in resources provided to its dealerships, the engine pistons as high-priced emissions related warranted parts where coverage should be provided pursuant to the CCR installed in the Class Vehicles as high-priced warranted parts. Mercedes-Benz does this in an effort to intentionally conceal the identity of the parts which should be covered under the 7-year and 70,000-mile California Emissions Warranty for high-priced emissions parts. This has intentionally misled consumers with regard to what parts are covered under the 7-year and 70,000-mile California Emissions Warranty for high-priced parts, and reduced the amount of money that Mercedes-Benz spends on warranty-related repairs. As warranted parts necessary for the operation of the vehicles, the parts that Mercedes-Benz failed to properly identify as high-priced relate to the central functionality of the vehicles and are critical to the vehicles' operation. If Mercedes-Benz complied with California law, and properly identified the engine pistons as high-priced warranted parts which should be identified as such, then Mercedes-Benz dealerships would properly provide warranty coverage for said high-priced warranted parts.

130.   Mercedes-Benz's failure to properly identify the engine pistons installed in the Class Vehicles as high-priced warranted parts as defined herein is a systematic and intentional business practice on the part of Mercedes-Benz to minimize the amount of money that Mercedes-Benz has to pay out in warranty

1    claims.

2          131.   Said conduct is likely to deceive an ordinary consumer as Mercedes-

3    Benz concealed this information from consumers and from Mercedes-Benz's

4    dealerships, in an effort by Mercedes-Benz to minimize the amount of money that

5    Mercedes-Benz has to pay out in warranty claims. One of the ways Mercedes-

6    Benz misleads consumers relates to the information that Mercedes-Benz provides

7    to consumers in the Mercedes-Benz warranty books. Mercedes-Benz intentionally

8    omits information from the warranty books by intentionally failing to classify the

9    engine pistons as high-priced warranted parts that should be covered under the 7-

10   year and 70,000-mile California Emissions Warranty.

11         132.   In evaluating the repair costs to be charged, Plaintiff and members of

12   the Classes have justifiably relied on the information in the warranty booklets

13   about parts that should be covered under the high-priced emissions warranty and

14   have been deceived and suffered damage as a result of Mercedes-Benz's

15   intentional and wrongful conduct.

16         133.   Mercedes-Benz is fully aware of its obligations pursuant to the CCR

17   and purports to comply with them. However, in derogation if its legal obligations,

18   Mercedes-Benz willfully and intentionally conceals from consumers, and from the

19   Mercedes-Benz dealerships, the engine pistons installed in the Class Vehicles

20   where coverage should be provided pursuant to the CCR as parts that should be

21   covered as high-priced warranted parts and emissions related parts as defined

22   herein pursuant to the California Emissions Warranty, in order to reduce the

23   amount of money that Mercedes-Benz has to pay in warranty claims.

24         134.   Mercedes-Benz is and was under a duty to disclose to consumers and

25   to its dealerships that the engine pistons installed in the Class Vehicles are

26   required to be covered under the California Emissions Warranty pursuant to the

27   CCR.

28   ///

CLASS ACTION COMPLAINT

1    135.   Mercedes-Benz is and was further under a duty to disclose to

2    consumers and to its dealerships all of the parts as defined herein which it is

3    required to cover under the 7-year and 70,000-mile California Emissions Warranty

4    because: (1) Mercedes-Benz is and was in a superior position to know the true

5    state of facts about the duration of the California Emissions Warranty and which

6    parts should be covered as high-priced warranted parts; (2) Mercedes-Benz has

7    made partial disclosures about the extent of the California Emissions Warranty;

8    (3) Mercedes-Benz has actively concealed and failed to identify all of the parts

9    that are covered under the California Emissions Warranty; and, (4) Members of

10   the Classes, including Plaintiff, have suffered actual loss due to Mercedes-Benz

11   concealment and false representations.

12   136.   The facts concealed and not disclosed by Mercedes-Benz to Plaintiff

13   and members of the Classes are material. Had Plaintiff and members of the

14   Classes known the true extent of the California Emissions Warranty and had

15   Mercedes-Benz been truthful to its dealerships and members of the Classes with

16   regard to identifying all of the parts and repairs as defined herein that are covered

17   under the California Emissions Warranty, Plaintiff and members of the Classes

18   would have been able to avoid spending money in order to repair Mercedes-Benz

19   vehicles. As a result, Plaintiff and members of the Classes have suffered damage.

20   137.   In order to minimize the amount of money that Mercedes-Benz

21   spends on warranty related repairs, Mercedes-Benz continues to conceal that the

22   engine pistons installed in the Class Vehicles are warranted parts that should be

23   covered under the California Emissions Warranty.

24   138.   Furthermore, Mercedes-Benz has refused to, and continues to refuse

25   to provide 7-year and 70,000-mile California Emissions Warranty coverage

26   relating to all repairs for the engine pistons installed in the Class Vehicles where

27   coverage should be provided pursuant to the CCR. This refusal is intentional,

28   willful, unfair, and unlawful.

## SECOND CLAIM FOR RELIEF

### Violation of California Consumers Legal Remedies Act

### (Cal. Civil Code § 1750, *et seq.*)

139.    Plaintiff re-alleges and incorporates by reference each allegation set forth above.

140.    Mercedes-Benz has violated Section 1770 of the California Consumers Legal Remedies Act, Cal. Civ. Code Section 1750, *et seq.* (the "CLRA"). The violation results from Mercedes-Benz's failure to keep its promise to the State of California, and members of the Classes, including Plaintiff, that it would honor the terms of the Mercedes-Benz warranty, and by doing so, that it would honor the terms of the CCR. Furthermore, the Mercedes-Benz warranty book provided by Mercedes-Benz to consumers, including Plaintiff, specifically references the California Emissions Warranty, and both inferentially and specifically represents that it will honor the terms of the CCR, however Mercedes-Benz has refused, and continues to refuse to honor the terms of the CCR, as stated herein.

141.    Plaintiff is a consumer who was wrongfully required to pay for repairs which should have been paid for by Mercedes-Benz pursuant to the CCR. The Subject Vehicle was presented by Plaintiff for repairs at a Mercedes-Benz authorized repair facility, in compliance with the terms and conditions of the Mercedes-Benz warranty. The Vehicle required repairs which should have been covered pursuant to the CCR, based upon the Vehicle's mileage and age. Mercedes-Benz wrongfully failed and refused to pay for the warranty repairs due to the unlawful pattern and practice set forth herein. Thus, Plaintiff suffered damage.

142.    Mercedes-Benz knows that it is violating the terms of the CCR, however Mercedes-Benz intentionally violates the CCR in order to save money. Plaintiff and members of the Classes are generally unaware of the terms and scope

of the CCR, thus Mercedes-Benz is able to get away with said wrongful conduct. As a result, Plaintiff and members of the Classes have suffered damage. Mercedes-Benz engages in a systemic pattern of denying warranty claims under the CCR relating to high-priced warranted parts.

143.   Plaintiff and members of the Classes have presented Class Vehicles to Mercedes-Benz authorized repair facilities for repairs that should have been covered under the CCR, but coverage has been wrongfully denied to them. As a result, Plaintiff and members of the Classes have thus suffered damage. Plaintiff brings this claim on behalf of himself and the Classes.

144.   Mercedes-Benz's conduct in warranting, advertising, leasing, selling and distributing Class Vehicles in the State of California, while at the same time knowingly and wrongfully failing to honor the terms of the CCR, constitutes the following violations of Section 1770:

(a)   Mercedes-Benz represents and has represented that Class Vehicles sold and leased in the State of California have characteristics or benefits which they did not have (in violation of Section 1770(a)(5));

(b)   Mercedes-Benz has falsely represented that Class Vehicles sold and leased in the State of California were of a particular standard, quality, or grade when they were of another (in violation of Section 1770(a)(7)); and,

(c)   Mercedes-Benz advertised Class Vehicles that have been sold and leased in the State of California with the intent not to sell them as advertised (in violation of Section 1770(a)(9)).

145.   Civil Code section 1780(a) provides that any consumer who suffers damage as a result of a violation of the CLRA may bring an action to recover: 1) actual damages, but in no case shall the total award of damages in a class action be less than $1,000; 2) an order enjoining the methods, acts, or practices; 3) restitution of property; 4) punitive damages; and 5) any other relief that the court

1    deems proper.

2        146.    Civil Code section 1781 provides that Plaintiff may pursue this case

3    as a class action.

4        147.    Plaintiff requests injunctive relief pursuant to Civil Code 1782(d).

5        148.    Plaintiff is entitled to attorney fees pursuant to Civil Code section

6    1780(e).

7        149.    On March 7, 2022, Mercedes-Benz was served notice via certified

8    mail return receipt of its violations of the Consumer Legal Remedies Act, as set

9    forth herein. A demand was made to Mercedes-Benz that it take corrective action.

10   Mercede-Benz failed to take the corrective action demanded in the March 7, 2022

11   notice.

12                            **PRAYER FOR RELIEF**

13       WHEREFORE, Plaintiff, on behalf of himself and all others similarly

14   situated, prays for relief and judgment against Mercedes-Benz as follows:

15   (a) An order certifying the proposed Classes, designating Plaintiff as named

16   representative of the Classes, and designating the Plaintiff's Counsel as Class

17   Counsel;

18   (b) A declaration that Mercedes-Benz is financially responsible for notifying all

19   members of the Classes about the wrongful conduct set forth herein; that

20   Mercedes-Benz's conduct as alleged herein violates the California Emissions

21   Warranty including, without limitation, that Mercedes-Benz has used, and

22   continues to use, the wrong or incorrect standards for identifying "emission-

23   related" parts and "high-priced warranty parts" under the California Emissions

24   Warranty; that Mercedes-Benz failed and is failing to properly identify and

25   warrant under the California Emissions Warranty the engine pistons installed in

26   Class Vehicles; and/or that Plaintiff and the members of the Classes are entitled to

27   warranty coverage under California Emissions Warranty for engine pistons

28   installed in Class Vehicles under the California Emissions Warranty described or

CLASS ACTION COMPLAINT

1    defined herein;

2    (c) An order requiring Mercedes-Benz to

3        (1)    review its warranty books for all Class Vehicles and properly identify
4               and warrant all "emissions-related parts" and

5        (2)    for all such parts, and for all parts that Mercedes-Benz already
6               identified in its warranty books or that Mercedes-Benz previously
7               identified and submitted to CARB as "emissions parts" or
8               "emissions-related parts," recalculate whether those parts, in fact,
9               should properly be characterized as "high priced parts" when the
10              correct, rate is used;

11       (3)    on a going forward basis, use the proper standard for determining
12              whether a part is "emissions-related" under the California Emissions
13              Warranty;

14       (4)    otherwise accurately and comprehensively apply the CCR in order to
15              properly identify all parts as defined and limited herein that should be
16              covered under the California Emissions Warranty; and (5) enjoin
17              Mercedes-Benz from further deceptive distribution, sales, and lease
18              practices, and to reimburse both Plaintiff and members of the Classes
19              for the money wrongfully paid by Plaintiff and members of the
20              Classes relating to repairs which should have been covered by
21              Mercedes-Benz under the California Emissions Warranty;

22   (d) An award to Plaintiff and members of the Classes of any repair costs they are
23   owed, reimbursement for all out-of-pocket expenses, including diagnostic costs,
24   that Class Members paid for repairs that should properly have been covered by
25   Mercedes-Benz under the California Emissions Warranty and other amounts to
26   which they may be legally entitled;

27   (e) An award to Plaintiff and members of the Classes of damages in an amount to
28   be proven at trial;

CLASS ACTION COMPLAINT

1    (f) An award of attorneys' fees and costs as allowed by law and/or pursuant to

2    California Code of Civil Procedure § 1021.5;

3    (g) An award of pre-judgment and post-judgment interest;

4    (h) Leave to amend the Complaint to conform to the evidence produced at trial;

5    and,

6    (i) Other relief as may be appropriate under the circumstances.

7

8    Dated: August 1, 2022                    Respectfully submitted,

9                                              **POMERANTZ LLP**

10                                             **THE LAW OFFICE OF ROBERT STARR**
                                               **FRONTIER LAW CENTER**

11                                             By:_____ /s/ Robert Starr_____

12                                                 Jordan L. Lurie
                                                   Ari Y. Basser
13                                                 Robert L. Starr
                                                   Manny Starr
14                                                 *Attorneys for Plaintiff*

15

16

17

18

19

20

21

22

23

24

25

26

27

28